IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. CASTLE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOSEPH C. CASTLE, APPELLANT.

Filed July 7, 2026.    No. A-25-780.

Appeal from the District Court for Douglas County: TRESSA M. ALIOTH, Judge. Affirmed.

Adam J. Sipple, of Sipple Law, for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

RIEDMANN, Chief Judge, and MOORE and PIRTLE, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Joseph C. Castle appeals from his conviction of attempted first degree sexual assault of a child, in violation of Neb. Rev. Stat. §§ 28-319.01 and 28-201 (Reissue 2016), following a jury trial in the district court for Douglas County. For the reasons stated herein, we affirm.

## II. BACKGROUND

The child, L.R., was born March 2019. Castle, born June 1984, was friends with L.R.'s mother, Michaela R.

In October 2023, Castle invited Michaela to bring L.R. to swim at a hotel where he was staying. Michaela agreed and brought L.R. to the hotel, but she later left. L.R. stayed there alone with Castle. L.R. was not toilet trained, and while Michaela was gone, she "pooped in [her] pants." Castle changed L.R.'s "Pull-Up" but he was upset with her for having an accident.

- 1 -

In January 2024, L.R. was removed from Michaela's care for reasons unrelated to this case and was placed with her aunt and uncle. In February, L.R.'s aunt, Amber S., put her in therapy to help her toilet train and adjust to her new living situation.

In March 2024, L.R. told Amber that Castle had hurt her in a hotel room after she had "pooped her pants." Amber asked where Castle had hurt her and L.R. pointed to her vagina. Around that same time, L.R. made a similar statement to another child in her preschool class, which prompted a report being made to the Department of Health and Human Services (DHHS).

Amber was eventually directed to take L.R. to a child advocacy center, Project Harmony, which provides services for families and children regarding allegations of abuse and neglect. L.R. was seen at Project Harmony in April 2024.

A forensic interview was conducted at Project Harmony, during which L.R. stated that Castle had "done something bad" to her. She clarified that he had hurt her by touching her "private" part with his finger multiple times while changing her diaper at the hotel. A medical examination of L.R. was also performed by a nurse practitioner. L.R. told the nurse practitioner that Castle only touched the outside of her vagina.

Castle was eventually charged by information with one count of attempted first degree sexual assault of a child under §§ 28-319.01 and 28-201. He pled not guilty to the charge and a jury trial was held over the span of multiple days in July 2025. Additional necessary facts will be included in our analysis.

Following the trial, the jury found Castle guilty of the charged offense. Castle was sentenced in September 2025 to 15 to 20 years' incarceration with credit for 64 days' time previously served. He now appeals.

## III. ASSIGNMENTS OF ERROR

Castle assigns, restated, condensed, and reordered, that (1) the district court erred by declining his proposed jury instruction; (2) the district court erred by allowing the State, over his objections, to introduce expert testimony which bolstered L.R.'s credibility or validated her allegations; (3) the district court erred by overruling his hearsay objections without providing a limiting instruction; and (4) his defense counsel provided ineffective assistance in specific ways.

## IV. ANALYSIS

### 1. JURY INSTRUCTION

Castle assigns that the district court erred by refusing to give his requested jury instruction regarding the definition of "sexual penetration." For the following reasons, we reject this assigned error.

### (a) Standard of Review

Whether jury instructions given by a trial court are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Flores*, 321 Neb. 284, 34 N.W.3d 106 (2026).

### (b) Additional Facts

Following the trial but prior to the submission of the case to the jury, a jury instruction conference was held. During the conference, Castle objected to the court's proposed instruction which verbatim stated that "'[s]exual [p]enetration' shall mean any intrusion, however slight, into the genital or anal openings of a victim by any part of the [d]efendant's body which can be reasonably construed as being for non-medical, non-health, or non-law enforcement purposes." Castle submitted a proposed instruction which would have instructed the jury regarding the definition of "sexual penetration" using the exact statutory language provided by Neb. Rev. Stat. § 28-318 (Supp. 2025). The court, however, rejected Castle's proposed jury instruction and instructed the jury using its initial definition.

### (c) Application to Castle's Claims

Here, Castle was charged with attempted first degree sexual assault of a child. Under § 28-201, a person is guilty of an attempt to commit a crime if that person intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he or she believes them to be or that person intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime. Under § 28-319.01, a person may be convicted of first degree sexual assault of a child "when he or she subjects another person under twelve years of age to sexual penetration and the actor is at least nineteen years of age or older."

Section 28-318 provides, in relevant part, that

[s]exual penetration means sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical, nonhealth, or nonlaw enforcement purposes. Sexual penetration shall not require emission of semen.

Castle asserts that the court's jury instruction was vague, confusing, and overbroad because it excluded the other examples of "sexual penetration" (sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse), as well as the sentence "[s]exual penetration shall not require emission of semen." § 28-318. He argues that this statutory language would have made it clear to the jury that the Legislature intended for § 28-319.01 to prohibit only "sexual conduct." Brief for appellant at 16. He also asserts that, because he was charged with an attempted crime, the statutory language would have made it obvious to the jury that it was required to find proof he intended to engage in "sexual conduct." *Id*. at 17.

Castle contends the absence of this statutory language in the given instruction led the jury to incorrectly believe even nonsexual actions could sustain his conviction of the charged offense. Accordingly, he asserts that he was prejudiced by the court's refusal to give his proposed jury instruction because there was no evidence that he had touched L.R. for "purposes of sexual arousal or gratification," and thus there was no evidence he had engaged in "sexual conduct." Brief for appellant at 18. Therefore, he should not have been convicted under §§ 28-319.01 and 28-201.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law,

(2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Flores*, 321 Neb. 284, 34 N.W.3d 106 (2026)*.* There is no prejudicial error warranting reversal if the jury instructions, read together and taken as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the evidence. See *State v. Matteson*, 313 Neb. 435, 985 N.W.2d 1 (2023).

Here, the court's jury instruction mirrors the language of § 28-318, except that some parts of the definition were excluded. However, it is not error for the trial court to omit inapplicable portions of a statute in a jury instruction. See *State v. Reichstein*, 233 Neb. 715, 447 N.W.2d 635 (1989). See, also, *State v. Mielak*, 33 Neb. App. 309, 16 N.W.3d 143 (2025) (law does not require jury instruction track exact statutory language). There was no allegation that Castle had sexually penetrated L.R. by means of sexual intercourse, cunnilingus, fellatio, or anal intercourse, or that emission of semen was at issue. This statutory language could accordingly be properly excluded from the jury instruction. See *Reichstein, supra*.

Furthermore, Castle's argument that a conviction under § 28-319.01 must be supported by evidence of sexual arousal or sexual intent conflates the definition of sexual contact with sexual penetration. Although the definition of sexual contact "includes only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party," see § 28-318(5), the definition of sexual penetration contains no such limitation. Rather, sexual penetration encompasses "any intrusion" of an actor's body into specific parts of a victim's body not done for medical, health, or law enforcement purposes. See *In re Interest of Jordan B.*, 300 Neb. 355, 913 N.W.2d 477 (2018) (recognizing it is possible to have sexual penetration without having sexual contact). See, also, *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012) (adopting reasoning of *State v. Schmidt*, 5 Neb. App. 653, 562 N.W.2d 859 (1997) that sexual penetration does not require sexual contact for purpose of sexual arousal or gratification).

Thus, contrary to Castle's argument on appeal, the additional examples of sexual penetration and the sentence "[s]exual penetration shall not require emission of semen" were irrelevant here. See § 28-318. The jury could find that Castle had attempted to "sexually penetrate" L.R. per § 28-318's definition without any evidence that Castle was motivated by sexual arousal or gratification.

Castle cannot establish reversible error because the court's instruction correctly stated the law, was not misleading, and adequately covered the issues supported by the evidence. See *Matteson, supra.* This assigned error fails.

### 2. EXPERT WITNESS TESTIMONY

Castle assigns the district court erred by allowing the State to introduce over Castle's objection expert testimony from L.R.'s therapist, Nicole Larsen, validating the allegations made by L.R. In his argument, Castle identifies only two objections which he claims were timely and appropriate. Having reviewed these objections, we find no error in the district court's rulings.

### (a) Standard of Review

An appellate court reviews a trial court's ruling to admit or exclude an expert's testimony for abuse of discretion. *State v. Lewis*, 319 Neb. 847, 25 N.W.3d 421 (2025).

(b) Additional Facts

At trial, the State asked Larsen, "[i]n your training and experience, what are some symptoms that children who have experienced trauma could exhibit?" Castle's counsel objected to this question on relevance grounds but was overruled. Larsen then testified to some examples of "very common trauma symptoms" experienced by children.

The State asked Larsen if some of these symptoms depended on each individual child and his or her age; Larsen responded "yes." Castle's trial counsel objected to Larsen's answer on relevance grounds. Following a sidebar in which Castle's counsel stated he had not been put on notice that Larsen would provide expert testimony, the court overruled Castle's objection.

(c) Application to Castle's Claims

Castle's assigned error is directed at the district court's overruling of the two objections listed above. In his brief, he argues that there was no purpose for Larsen's testimony "other than to support an inference Larsen, as an expert with substantial experience, found from her direct personal involvement with L.R., that, based upon L.R.'s symptoms and 'disclosures,' that L.R.'s reports were true, and diagnosed and treated her accordingly." Brief for appellant at 20. Castle argues that Larsen's testimony constitutes inadmissible expert witness testimony and cites our prior opinion in *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993).

In *Doan, supra*, the State had presented expert testimony at trial from a counselor who had treated the alleged victim. The counselor testified to the characteristics typically seen in sexually abused children and that part of her function was to evaluate "'whether or not I believe they've been abused or not.'" *Id*. at 488, 498 N.W.2d at 807. The counselor testified about the history she obtained from the alleged victim and described the alleged victim's physical appearance and reactions while the alleged victim described the abuse to the counselor. See *id*. The counselor concluded that she had received validation of the alleged abuse. See *id*.

We concluded that this opinion testimony should have been excluded for lack of proper foundation because there was "no showing" that the counselor "had the underlying expertise to validate [the] account of sexual abuse, even if such testimony could be received, which it cannot." *Id*. at 496, 498 N.W.2d at 812. We ultimately held that, in a prosecution for sexual assault of a child, an expert witness may not give testimony which directly or indirectly expresses an opinion that the child is believable, that the child is credible, or that the witness' account has been validated. See *id*.

However, the Nebraska Supreme Court has found that an expert's testimony was admissible where the expert testified about symptoms, behavior, and feelings generally exhibited by children who have been sexually abused. See *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992). In that case, the testimony was not premised on an examination of the victim but was relevant to assist the trier of fact in understanding and determining whether the defendant had sexually assaulted the victim, and therefore, it came within the requirements of Neb. Rev. Stat. § 27-702 (Reissue 2016). See *Roenfeldt, supra*. Section 27-702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The reasoning for allowing an expert to testify about sexual abuse in generalities is that few jurors have sufficient

familiarity with child sexual abuse to understand the dynamics of a sexually abusive relationship and the behavior exhibited by sexually abused children is often contrary to what most adults would expect. See *Roenfeldt, supra*.

Reviewing the two relevancy objections Castle identified in his brief, we conclude that the district court did not abuse its discretion in overruling them. Unlike the testimony in *Doan, supra*, these portions of Larsen's testimony were not specific to her observations or treatment of L.R. Rather, Larsen testified only to symptoms generally exhibited by children who have experienced trauma. Her testimony was relevant to aid the jurors in understanding the effects of trauma on children in determining whether Castle had sexually abused L.R. This claim fails.

### 3. LIMITING INSTRUCTION

Castle argues the district court erred by overruling his hearsay objection and allowing Cheryl Decker, L.R.'s preschool teacher, to testify without providing a limiting instruction that L.R.'s statement to a classmate could not be considered for the truth of the matter asserted. We disagree.

### (a) Standard of Review

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

### (b) Additional Facts

When L.R. was in preschool in spring 2024, a paraprofessional working in her classroom overheard L.R. say something concerning to a classmate. This paraprofessional reported L.R.'s statement to Decker, and Decker testified at trial that, based on the nature of L.R.'s statement, she made a report to Child Protective Services. The State attempted multiple times to ask further questions concerning the specifics of L.R.'s statement but the court sustained defense counsel's hearsay objections.

After explaining to the court that it intended to offer L.R.'s statement to explain Decker's actions, rather than for the truth of the matter asserted, the State asked Decker "[w]hat [was] it that [L.R.] told the student?" Castle's counsel objected to the question on foundational and hearsay grounds but was overruled. Decker then testified that L.R. had told the student that a man had hurt her after she had gone to a hotel with him and her mother, and he had "put his fingers some place." Throughout Decker's testimony, Castle's counsel never requested the court provide a limiting instruction.

### (c) Application to Castle's Claims

The Supreme Court has held that, in the absence of a request for a limiting instruction, there is no reversible error in a court's failure to give a limiting instruction. See *Valverde, supra*. While, normally, the better practice is for a trial court to provide a limiting instruction to the jury regardless of a request, so as to ensure the evidence is not used for an improper purpose, the

majority view is that the court does not have a duty to present a limiting instruction to the jury sua sponte. See *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

It is undisputed that Castle's counsel never requested a limiting instruction after his objection was overruled on hearsay grounds. Because the district court was not required to provide a limiting instruction sua sponte, there is no reversable error. See *Valverde, supra.* This assigned error fails.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Castle assigns that his trial counsel was ineffective for two reasons. First, he contends that counsel should have objected to testimony elicited from Candace Partee, a DHHS investigator. Second, Castle asserts that counsel should have objected to testimony elicited from Mary Ellwanger, the nurse practitioner at Project Harmony. These assigned errors fail.

#### (a) Standard of Review

An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025).

Whether an assignment of error and accompanying argument is too vague to be sufficiently raised before the appellate court is a question of law. *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025).

#### (b) Ineffective Assistance Claims Generally

##### *(i) Legal Principles*

Prevailing on a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), requires proving both that counsel's performance was deficient and that the deficient performance actually prejudiced the defendant. A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *Kruger, supra*.

To show deficient performance, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *Id*. There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id*.

To show prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. In determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case. *Id*.

However, a defendant seeking to raise a claim of ineffective assistance on direct appeal is not required to make specific allegations of prejudice to preserve a claim of ineffective assistance

of counsel. See *State v. Lopez*, 321 Neb. 118, 32 N.W.3d 868 (2026). Rather, when reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient, and that the deficient performance actually prejudiced the defendant's defense. See *Kruger, supra*.

The record on direct appeal is sufficient to conclusively determine claims of ineffective assistance if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. See *id*. Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires examination of facts not contained in the record. *Id*.

Also, when a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must properly raise on direct appeal any issue of trial counsel's deficient performance which is either known to the defendant or is apparent from the record. See *Lopez, supra*. Any known or apparent issue of deficient performance not properly raised on direct appeal will be procedurally barred in a subsequent postconviction proceeding. *Id*.

### (ii) Specificity Requirements

In every appeal in Nebraska, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Id*. As we have stated, a defendant seeking to raise a claim of ineffective assistance on direct appeal is not required to make specific allegations of prejudice. See *id*. However, anytime a defendant seeks to raise an ineffective assistance claim, whether on direct appeal or in a postconviction motion, the defendant must specifically assign and specifically argue the alleged deficient performance and must do so with sufficient particularity. *Id*.

To sufficiently allege deficient performance, the allegations must include a description of the specific conduct alleged to constitute deficient performance. See *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025). The description of deficient performance must be particular enough to (1) allow an appellate court to determine whether the claim can be decided upon the trial record and (2) allow a district court reviewing a later postconviction motion to recognize whether the claim was raised on direct appeal. *Lopez, supra*.

An allegation will be sufficiently specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks. See *Rupp, supra*. Although the argument section of the brief should elaborate on the alleged deficiencies by discussing legal authority and its application to the trial record, the argument section should not be used to set forth, for the first time, what the allegedly deficient conduct was. *State v. Lopez*, 321 Neb. 118, 32 N.W.3d 868 (2026). Rather, an assignment of error, standing alone, must specifically allege what conduct constituted deficient performance. See *Rupp, supra*.

### (c) Application to Castle's Claims

### (i) Candace Partee

Castle's assigned error, in its entirety, states, "[d]efense counsel provided ineffective assistance when he failed to object to testimony elicited from Candace Partee, a DHHS

investigator, that L.R. would be at risk for harm or danger if left in the care of Castle." Castle has failed to present this assigned error in accordance with the specificity required for appellate review.

The wording of this assigned error leaves us to guess on what grounds an objection should have been made to Partee's testimony. Thus, the assigned error cannot stand on its own, but would require additional information, to permit us to determine if counsel was deficient in failing to make a specific objection or whether the claim can be decided upon the trial record. See *Rupp, supra*; see also *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016) (holding general allegation counsel failed to object, without asserting what grounds supported objection, insufficient to preserve deficient performance claim). Also, because Castle did not provide a specific basis for the objection, a district court would be unable to determine in a postconviction proceeding whether the precise claim had been made on direct appeal. See *Lopez, supra*. We therefore do not address its merits.

### (ii) Mary Ellwanger

Castle assigns that, "defense counsel provided ineffective assistance when he failed to object to expert validation testimony from Mary Elllwanger, [sic] a nurse at Project Harmony who examined L.R., that L.R. needed a therapist with training regarding sexual abuse." Because the assigned error indicates that Ellwanger's testimony was allegedly improper "validation testimony" by an expert witness, it is clear Castle is asserting that his trial counsel should have objected on that basis. We therefore proceed to address his claim.

### a. Additional Facts

Our review of the record citations provided by Castle discloses the following. At Project Harmony, L.R. participated in a forensic interview with Ellie Arnold. Arnold spoke with Ellwanger afterward and informed Ellwanger what L.R. had said during the interview. Ellwanger relied on the information relayed by Arnold to guide her diagnosis and treatment of L.R.

Ellwanger then met with L.R. Ellwanger spoke to L.R. and gathered history including whether L.R. took any medicine, with whom she lives, where she goes to school, whether she was in therapy, as well as why L.R. was at Project Harmony and what she had spoken about with Arnold. When asked why she had spoken to Arnold, L.R. informed Ellwanger that Castle had done "bad things" to her and, while poking toward her vaginal area and moving her finger back and forth, stated that, "[h]e did it ten times. It hurted." After Ellwanger explained the anatomy of the vaginal area, L.R. told Ellwanger that Castle touched the outside of her vagina. Ellwanger then conducted the medical exam of L.R., which did not reveal any abnormal findings.

The following line of questioning then ensued:

[State:] So after you completed the physical exam with [L.R.] and gathered all of the history, what did you do next?

[Ellwanger:] I met with her caregiver to go over the exam and how everything went.

[State:] And did you make any -- formulate a treatment plan?

[Ellwanger:] Yes, I did.

[State:] And what was your treatment plan?

[Ellwanger:] For [L.R.], her aunt had mentioned that she was currently in therapy, so I just recommended continuing therapy, but just ensuring that her current therapist was a trauma-informed therapist who is trained in sexual abuse.

### b. Discussion

Castle contends that Ellwanger "provided the opinion L.R. needed a therapist who is 'trained in sexual abuse,'" which constituted impermissible expert testimony under *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993). Brief for appellant at 23. Castle argues this testimony indirectly validated L.R.'s allegations of sexual abuse; thus, his trial counsel should have objected on this basis.

As we have previously stated, an expert witness in a prosecution for sexual assault of a child may not give testimony which directly or indirectly expresses an opinion that the child is believable, that the child is credible, or that the witness' account has been validated. See *Doan, supra*. We, however, disagree with Castle's characterization that Ellwanger's testimony describing her treatment plan validated L.R.'s allegations.

An analogy may be helpful. If a patient presented to his or her primary care physician complaining of joint pain, it would be abnormal for that physician to question whether the patient was being truthful about his or her symptoms. Rather, the physician would likely proceed to personally investigate the symptoms or perhaps would refer the patient to a joint specialist for further examination.

A medical professional typically does not determine that a patient is being untruthful about experiencing reported symptoms and end treatment there. Rather, if the medical professional is unable to verify the cause of a reported symptom, he or she prescribes a plan of treatment or refers the patient to a specialist. A medical professional's traditional role is to treat a patient's reported symptoms, not determine their veracity.

Similarly here, Ellwanger is a medical professional, and her treatment plan was intended to address the concerns reported by L.R. L.R.'s self-reported history indicated that she had been sexually abused by Castle; thus, Ellwanger created a treatment plan which recommended L.R. see a trauma-informed therapist who was trained in sexual abuse. There is no indication, based on this testimony, that Ellwanger had made a determination of whether L.R. was credible, or whether L.R.'s allegations of Castle's touching were true, in developing the treatment plan and making the therapeutic recommendation.

Ellwanger's testimony did not indicate, either directly or indirectly, that she was of the opinion that L.R. was believable or credible, or that L.R.'s allegations had been validated. An objection on the basis of improper expert testimony would therefore have been meritless to a question that merely inquired into the treatment plan she developed. Thus, Castle's trial counsel was not ineffective. See *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025) (as matter of law, trial counsel not ineffective for failing to make meritless objection). This assigned error fails.

### 5. CONSTITUTIONAL QUESTIONS

The record discloses that Castle has filed a notice that alleges §§ 28-319.01 and 28-201(4)(a) are unconstitutional pursuant to the U.S. and Nebraska Constitutions. See Neb. Ct.

R. App. P. § 2-109(E) (rev. 2024). However, Castle has failed to preserve the issues for appellate review.

We initially note that Castle has failed to assign his constitutional challenges as error in his brief, which precludes an appellate court from addressing the argument on appeal absent plain error. See § 2-109(D)(1)(e) (cautioning consideration of case limited to errors assigned and discussed in party's brief unless court notices plain error not assigned). Also, in reviewing the transcript and bill of exceptions in this case, we find Castle did not file any motions that challenged the constitutionality of §§ 28-319.01 and 28-201(4)(a), and he never asked the district court to determine whether the statutes were constitutional. Thus, Castle has forfeited appellate review of this claim because, for a question of constitutionality to be considered on appeal, it must have been specifically called to the district court's attention in some way so that the court has an opportunity to rule upon it. See *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024). We accordingly do not address Castle's constitutional questions.

## V. CONCLUSION

For the foregoing reasons, Castle's assigned errors fail. We therefore affirm Castle's convictions and sentences.

AFFIRMED.